Irene Crowell *vs.* First National Stores, Inc.

Bristol.    December 7, 1960. — March 30, 1961.

Present: Wilkins, C.J., Spalding, Williams, & Cutter, JJ.

*Food. Negligence,* Food, Res ipsa loquitur. *Sale,* Of food.

Evidence in an action against the proprietor of a store showing merely that frankfurts were unwholesome and made the plaintiff ill when eaten by her on a picnic eighteen hours after they had been purchased by her at the store and then had been unpackaged, rewrapped, and placed in a refrigerator at her home did not warrant a finding that they were unfit to be eaten at the time of purchase or that the defendant was negligent or violated G. L. c. 94, § 150; the doctrine of res ipsa loquitur was inapplicable.

Tort.    Writ in the Superior Court dated July 8, 1957.

The action was tried before *Kirk,* J.

The case was submitted on briefs.

*James A. Heaney,* for the plaintiff.

*Charles R. Desmarais & William H. Carey,* for the defendant.

WILLIAMS, J.   This is an action of tort to recover damages for an illness caused by eating frankfurts purchased from the defendant in Fall River on Friday, July 8, 1955. The plaintiff testified that they were taken from a self service cooler in the defendant's store; and that they were contained in a package of eight or ten which was wrapped in cellophane and were bought about 5 P.M.   On arriving home, the plaintiff removed the cellophane, wrapped the frankfurts in aluminum foil and placed them in her refrigerator.   On the following day, Saturday, she took them from the refrigerator, placed them in a cooler packed with ice, and with her husband and three children went on a picnic.   At about 11 A.M. her husband fried the frankfurts with butter.   The plaintiff and her husband each ate two frankfurts on rolls garnished with mustard and relish and the youngest child ate one.   The other children did not eat any frankfurts.   A few hours later, the child who had eaten the frankfurt complained of pain in her stomach. At 3:30 P.M. the family left the picnic and went to the home of the plaintiff's mother-in-law.   There the child vomited small pieces of frankfurt and the plaintiff felt nauseated. Shortly thereafter the family went home.   Early the next morning the plaintiff vomited and was sick all day ''with vomiting and dysentery.''   On Monday she had severe pains in her abdomen and later consulted a doctor.   He sent her to a hospital where she was operated on for appendicitis.   Previous to eating the frankfurts, the family ate fish at supper on Friday night and had coffee and toast for breakfast on Saturday.

On cross-examination, the plaintiff testified that she noticed nothing the matter with the frankfurts when she purchased them nor when she unpackaged them at home. At the picnic she ate ''other things, including rolls, mustard, relish, pickles, chips and . . . may have eaten olives.'' The child ''ate other products than the frankfurt.''   When the plaintiff ate the frankfurts, she noticed nothing unusual

or wrong with them and on Sunday morning attributed "nothing particularly wrong to" them. The plaintiff's husband testified that the frankfurts were "all right" at the time he ate them but that in one half to three quarters of an hour after eating them he thought they were "not good" because he could taste them. He had eaten "pickles and olives and food products other than frankfurts that go into the making of a family picnic."

A verdict for the plaintiff was taken under leave reserved and a subsequent motion by the defendant that a verdict be entered for it under such leave was allowed. To the allowance of this motion, the plaintiff excepted.

It could be found that at the time the frankfurts were eaten they were unwholesome and caused the illness of the persons who ate them. But this evidence of their condition eighteen hours after they had been purchased and unpackaged and rewrapped by the plaintiff was not sufficient to warrant a finding that it was caused by some negligence on the part of the defendant. This is not a case where the doctrine of res ipsa loquitur applies. *Crocker* v. *Baltimore Dairy Lunch Co.* 214 Mass. 177. *Blanchard* v. *Kronick,* 269 Mass. 464, 465. *Bergantino* v. *General Baking Co.* 298 Mass. 106, 108. *Mellace* v. *John P. Squire Co.* 306 Mass. 515, 516. It did not appear that the frankfurts looked peculiar (see *Bergantino* v. *General Baking Co.* 298 Mass. 106, 108; *Flynn* v. *Growers Outlet, Inc.* 307 Mass. 373, 374–375) or when eaten "tasted bad" (*Schuler* v. *Union News Co.* 295 Mass. 350, 351). See *Johnson* v. *Kanavos,* 296 Mass. 373, 375. It would be mere conjecture to find that when purchased the frankfurts were not fit to be eaten. For the same reason it could not be found that the defendant had violated G. L. c. 94, § 150, a penal statute which prohibits the sale of unwholesome food products without making the condition of "the thing sold" fully known to the buyer. Compare *Flynn* v. *Growers Outlet, Inc., supra,* page 378.

There was no error in entering a verdict for the defendant.

*Exceptions overruled.*